MATAGORDA COUNTY et al. v. HORN. (No. 7009.)

(Court of Civil Appeals of Texas. Galveston. Nov. 17, 1915. Rehearing Denied Nov. 24, 1915.)

Highways ⬦90 — Road Districts — Proceeds of Bonds—Breach of Contract.

Under Rev. St. art. 627, declaring that any county or any road district may issue bonds for the purpose of constructing and operating macadamized, graveled, or paved roads and turnpikes, payment of a claim for breach of a contract for work on a road cannot be made out of the proceeds of road bonds, for such claim is one closely akin to a tort, and is not one for the construction, maintenance, or operation of roads or turnpikes.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 301, 302; Dec. Dig. ⬦90.]

Appeal from District Court, Matagorda County; Sam'l J. Styles, Judge.

Action by W. R. Horn against the County of Matagorda and Matagorda County Road District No. 2. From a judgment against the latter defendant, it appeals. Reformed and affirmed.

W. E. Davant and Krause & Wilson, both of Bay City, for appellant. Gaines & Corbett, of Bay City, for appellee.

LANE, J. W. R. Horn brought this suit against Matagorda county, and Matagorda county road district No. 2, a road corporation, organized under, and exercising the rights and powers conferred by, article 627 of the Revised Statutes of 1911, to recover the sum of $1,885.50, for damages alleged to have been suffered by him by reason of the breach of a certain contract entered into between him and said road district for the hauling and distribution of certain mud shell upon the roads of said road district. Matagorda county was dismissed from the suit before the trial. Judgment was rendered against the road district in favor of W. R. Horn for the sum of $550. The judgment also directs that a proper warrant be issued by the proper officers and delivered to Horn, to be paid out of the proceeds arising from the sale of road bonds issued and sold by said road district, under the provisions of said article 627—

"for the purpose of constructing and maintaining, and operating macadamized, graveled or paved roads and turnpikes, or in aid thereof."

From the judgment so rendered said road district has appealed.

The only error assigned is, in substance, that the trial court erred in directing and decreeing that said judgment so rendered shall be paid out of the proceeds arising from the sale of said bonds, because said judgment was not upon a claim or demand for services or labor performed, or for any aid otherwise given, or performed, in the construction, maintenance, or operation of said roads or turnpikes, and therefore was not for any of the purposes for which bonds can be issued and sold under the provisions of the statutes, and cannot lawfully be made payable out of said road funds. It seems to be assumed by all parties to the suit that at the time this suit was brought, the bonds had been sold, and the proceeds of such sale were in the custody of the proper officer for the uses for which they were sold. Nothing to the contrary being shown, we shall also so assume. After the issuance of said bonds said road district entered into a contract, which it was authorized to make, with appellee, Horn, to haul and distribute certain mud shell on its contemplated roads for an agreed compensation. Horn made all necessary preparations for the hauling of said shell, and notified the proper officers of said road district that he was ready to begin the performance of his part of the contract, and at all times stood ready, willing, and able to fully so perform the same. The road district, however, wholly failed and refused at all times to furnish said shell for hauling and wholly breached its contract. The judgment recovered by Horn was upon his claim for profits he would have made had the contract not been breached by the road district, and for the value of feed for his teams which remained idle because of such breach of contract. That Horn and the road district entered into the contract alleged; that it was a contract which the road district had the lawful right to make; that the road district breached the contract and that appellee Horn suffered damage in the sum of $550, the amount of recovery—is not questioned. The road district is not complaining of the recovery, or the amount of the judgment rendered against it,

but only of that part of same as directs its payment out of said funds.

Article 627, supra, under which said road district was incorporated, and from which it derives its authority to issue and sell bonds, for the construction, maintenance, and operation of roads and turnpikes, reads as follows:

"Art. 627. Any county in this state, or any political subdivision or defined district, now or hereafter to be described and defined, of a county, is hereby authorized and empowered to issue bonds, or otherwise lend its credit in any amount not to exceed one-fourth of the assessed valuation of the real property of such county, or political subdivision, or defined district thereof, and to levy and collect such taxes to pay the interest upon such bonds and provide a sinking fund for the redemption thereof, for the purpose of constructing and maintaining and operating macadamized, graveled or paved roads and turnpikes, or in aid thereof."

Funds arising from the sale of bonds issued and sold under the provisions of the article quoted can be used only for the purposes expressly named therein, or for purposes implied thereby, by a fair and reasonable construction thereof. Unless the claim of appellee, Horn, can be held to be a claim founded upon some aid given in the construction, maintenance, or operation of said roads and turnpikes, authorized to be constructed, maintained, and operated by means of said bond issue, under the statute, the same cannot be lawfully paid out of proceeds arising from the sale of such bonds. We cannot see how a claim against said road district for damages for breach of contract can be construed to be a claim "for constructing, maintaining, or operating roads or turnpikes," or in any other way aiding in such construction, etc. The claim of appellee is for damages for breach of contract; and, while it is not for tort, it is close akin to a claim for tort, and we think cannot be lawfully paid out of the road construction funds of the appellant. That there should be some adequate remedy for the relief of appellee cannot be questioned, but that this court is powerless to supply such remedy or to give such relief, in the absence of some lawful authority, is equally true. When the law imposes restrictions upon the uses of special funds lawfully in the hands of public officers, they cannot lawfully divert such funds from the specific purpose for which it was collected. In the case of City of Sherman v. Smith, 35 S. W. 294, the court says:

"The argument that unless a mandamus be granted, in some form requiring provision for or payment of this claim, it might never be satisfied is not a consideration that would justify the diversion of a city's income from the purpose to which the law intends it to be primarily applied."

Harrison County v. Love, 94 Tex. 398, 60 S. W. 871, is a case disclosing that Harrison county, under an act of the Legislature passed April 12, 1871 (Acts 12th Leg. c. 37), issued certain bonds. The law under which said bonds were issued, among other things, provided that all taxes levied and collected thereunder should be paid into the state treasury and paid out upon warrant of the comptroller, and should be applied solely to the objects for which they were levied and collected, as follows: First, to the payment of the expenses of assessing and collecting the same; second, to the payment of the annual interest of such bonds, and not less than 2 per cent. of the principal; and, third, that if there remained any excess after said above payments, for the current year, it should be used in the purchase and cancellation of said bonds. The taxes were levied and collected as provided by the law and placed in the hands of the state treasurer. After all the bonds issued had been paid off and canceled, there remained in the hands of said treasurer the sum of $27,000. In 1893 the Legislature passed an act which provided:

"That whenever it shall appear to the state treasurer that any money paid into the state treasury by any county of this state for the liquidation of * * * bonds issued by such county remains to the credit of such county after all of said * * * bonds and interest have been paid, said state treasurer shall pay to the treasurer of such county such remaining sum, and the treasurer of such county shall receipt therefor." (Acts 23rd Leg. c. 53.)

Upon the refusal of the comptroller to draw his warrant upon the state treasurer for said sum of $27,000 Harrison county sought by mandamus to compel the comptroller to issue his warrant for said sum. In deciding the case the Supreme Court, speaking through Judge Gaines, says:

"We think it a clear proposition that, before the comptroller can be required to draw his warrant upon the treasurer, the Legislature must prescribe the duty. We also think it clear that the act of April 12, 1871, the provisions of which, in so far as they bear upon the question before us, we have set out either in their express terms or in substance, nowhere makes it the duty of the former to draw upon the latter in favor of any party for the surplus of a fund raised for the payment of the bonds provided for after the bonds have been fully paid. The act is as silent upon the subject as if no such surplus was contemplated. * * * It was probably thought that the provision which prescribes that the comptroller shall use any surplus which might remain from the annual collection after paying the annual interest and 2 per cent. of the principal, as prescribed by the act, in the purchase of the bonds, was a sufficient provision for the disposition of any surplus that might arise. However, it is clear that there is no express provision for the disposition of a final surplus. It is true that section 11 expressly provides that the treasurer shall pay out the fund upon the warrants of the comptroller, and from this provision there is a clear implication that the comptroller shall draw his warrants when necessary to carry out the provisions and purposes of the act. But the statute does not leave us in doubt as to the objects to which the fund, when collected, should be applied. These are expressly declared by section 8. The application of the money is: (1) To the expenses of collecting; (2) to the payment of the annual interest and 2 per cent. of the principal; and the balance, if any, in the purchase of the bonds. Nothing being said as to any final surplus, we think it clear that the Legislature did not intend to provide for such disposition in the act. This was probably the result of inadvertence, but it may have been that such provision was purposely omitted for the reason that the contin-

gency which would require such disposition would not arise for many years, and it may have been deemed best to leave the matter to the discretion of future Legislatures. The duty of the comptroller as to drawing warrants being confined to the payment and purchase of the bonds, we conclude that under the original act he was not authorized to determine the disposition of the final surplus, and that he was not empowered to draw his warrant therefor in favor of the county from which the fund came."

· Funds created for construction of roads by issuance and sale of bonds are held by the commissioners or other officers in trust for the purposes expressed in the statute, and cannot be diverted to other uses nor to the payment of damages caused by the negligence, or other wrongful conduct of the commissioners. 25 Cyc. § 3, page 198. In the case of Nugent v. Levee Commissioners, 58 Miss. 197, at page 217, in differentiating between corporations for strictly public purposes, without power to exact profits, and those with such powers and purposes, it is said:

"They [the commissioners] derive no other profit from the execution and maintenance of the works than a share in the beneficial results anticipated therefrom. The funds for their construction and maintenance are raised by rates imposed upon the district supposed to be benefited thereby; but no business is authorized to be carried on for profit, nor are any tolls authorized to be taken for any use of the works. The object is public, though the direct benefit is local. * * * The commissioners have no property except such as is strictly incident to the machinery for making and maintaining the works and raising the necessary rates, and have no power to levy a rate for any other purpose."

Again, 58 Miss. at page 220, same volume, it is said:

"In some [cases] it is held that the liability arises from the constitution of the body and the business it is charged with, if there be no restrictive language; in others it is said there ought to be an express provision for liability before it can attach. In this case the meaning of the act seems to be clear. The tax is levied, as expressed in the statute, 'for the purpose of repairing and constructing the levees, and for carrying into effect the object and purpose of securing the counties of Bolivar, Washington, and Issaquena from overflow from the Mississippi river.' This does not include the very different object of paying damages for the default and misconduct of the persons charged with the execution of the act. This expression of the purpose of the tax in the act is an exclusion of all other purposes. If such damages were chargeable on the fund, their payment might prevent the accomplishment of the purpose for which the tax was levied."

Having reached the conclusion that the trial court erred in decreeing and directing that the judgment rendered be certified and approved, and that a warrant be issued and delivered to appellee to be paid out of the funds of said road district which arose from the sale of its bonds, we here order that said judgment be, and the same is, reformed so that that portion thereof which orders the road superintendent to certify said judgment to the commissioners' court of Matagorda county, and orders said court to approve same and issue and deliver to appellee a warrant against the funds of said road district No. 2, be vacated and held for naught, and it is further ordered that said judgment, as reformed, be and the same is hereby affirmed.

Reformed and affirmed.